## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NUMAH BARKUE WILSON** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 15-1793** |
| | : | |
| **OFFICER JOEL JEAN, *et al.*** | : | |

**KEARNEY, J.**                                                             **October 30, 2015**

### MEMORANDUM

The First Amendment guarantees a citizen's right to peacefully protest when he perceives his local fire department unnecessarily delayed in responding to a fire which claimed the lives of four Philadelphia children, including two of his nieces, and destroyed ten homes. The Fourth Amendment guarantees a citizen's right to be free of arrest without probable cause. Peaceful protest does not involve bottle-throwing, threatening police and blocking the fire department's egress to attend to another emergency fire call.[1] Police officers asked to maintain crowd control and then facing threats and the crowd's blocking of the fire department may reasonably conclude active participants in the now-unruly protest are violating Pennsylvania criminal law on disorderly conduct regardless of whether charges are later dropped. The police officers making this determination on the street, based on the facts immediately before them, can adduce sufficient facts warranting summary judgment dismissing civil rights claims for false arrest based on qualified immunity. But qualified immunity does not automatically mean the officers also had probable cause under Pennsylvania law to arrest one of the protestors when we find several issues of material fact regarding his arrest now requiring a jury's evaluation. In the accompanying Order, we grant the officers' partial summary judgment on the civil rights claim

of false arrest based on qualified immunity but deny as to a Pennsylvania false arrest/false imprisonment claim.

## I.      Undisputed Material Facts[2]

A fire killed four Philadelphia children on July 6, 2014.[3] Adding to this tragic loss, the fire destroyed ten homes and displaced more than thirty residents.[4] On July 7, 2014, approximately 500 community members staged a protest believing firefighters contributed to the loss of life and property by not responding more quickly.[5]

Plaintiff Numah Barkue Wilson ("Wilson") lost two nieces in the fire.[6] He participated in the protest as captured by print and broadcast media.[7] Wilson arrived at the protest at approximately 6:00 pm, and Defendant police officers arrested him for disorderly conduct approximately one hour later.[8] Wilson described the crowd mood as "angry," "upset," "sad," "disappointed by the whole incident," "yelling" and "dramatic."[9] News footage shows Wilson yelling, gesturing, and waving his arms at police officers shortly before his arrest.[10] News footage also shows Wilson shouting "murderers" during his arrest. [11] Defendant Officer William Fitzgerald observed Wilson engaging in this behavior.[12] After arresting Wilson, Defendants released him from custody without charges.

Wilson then sued Defendant Police Officers Joel Jean, Kyle Smith and William Fitzgerald ("Officers") for false arrest and excessive force under 42 U.S.C. §1983 and supplemental Pennsylvania law claims of assault, battery, false arrest and false imprisonment.[13]

## II.     Analysis

Defendant Officers seek summary judgment on Wilson's civil rights action pursuant to 42 U.S.C. §1983 for false arrest, as well as related state law claims.[14] Defendants do not seek summary judgment on Wilson's §1983 excessive force and state law assault and battery claims,

2

and concede these claims will be resolved by the jury.[15] Defendant Officers argue they are entitled to summary judgment because they had probable cause to arrest Wilson for disorderly conduct while participating in a protest and qualified immunity shields the Defendants.  In the accompanying Order, we grant summary judgment in favor of Defendant Officers on Wilson's federal false arrest claim based on qualified immunity but not on the state law claims of false arrest and false imprisonment.

Standards for qualified immunity and probable cause under state law claims can differ, as shown by the disputed material facts.  The Supreme Court teaches qualified immunity protects Defendant Officers from liability "when their conduct 'does not violate clearly established ... constitutional rights' a reasonable official, similarly situated, would have comprehended."[16] Our Court of Appeals further teaches us in determining whether Defendant Officers are entitled to qualified immunity, we make a two-prong inquiry: whether the facts alleged, viewed in the light most favorable to Wilson, show Defendant Officers violated a constitutional right and whether that right was clearly established at the time of the Defendant Officers' actions.[17] We have discretion to decide the order in which we address the two prongs of the qualified immunity analysis.[18]  "[Q]ualified immunity will protect an official *either* when the official did not violate a constitutional right *or* when the right in question was not 'clearly established.'"[19]

We find qualified immunity protects the Defendant Officers from civil rights liability because Wilson's right to participate in a chaotic protest where there is evidence of his participation captured on video and admitted by him is not clearly established. Separately examining probable cause for the disorderly conduct arrest under Pennsylvania law, we find genuine issues of material fact requiring a jury's credibility evaluation.

3

### A.   Qualified Immunity protects the officers from federal false arrest liability.

Even if Wilson could maintain a claim for false arrest, Defendant Officers are entitled to qualified immunity because reasonable officers in their position would not have understood the arrest was unlawful.  The " 'dispositive inquiry' . . . 'is whether it would [have been] clear to a reasonable officer' in the [Defendant Officers'] position 'that [their] conduct was unlawful in the situation [they] confronted."[20] "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"[21]

Wilson argues Defendant Officers are not entitled to qualified immunity because, under the facts available to the Defendant Officers and viewed in the light most favorable to him, "no objectively reasonable officer would have believed there was probable cause to arrest and detain [him]."[22] As shown below, Wilson adduced facts creating a genuine issue of material fact concerning probable cause and the jury will determine credibility issues.

Questions as to probable cause do not end our qualified immunity inquiry.  There is no dispute Defendant Officers considered Wilson's conduct at the time of his arrest to constitute disorderly conduct.  Even if, based on facts unknown to the officers at the time, a fact-finder may later determine Wilson's conduct did not constitute disorderly conduct under the Pennsylvania statute, "qualified immunity encompasses judgments that are not plainly incompetent."[23]  Under Pennsylvania's disorderly conduct statute, whether "words or acts rise to the level of disorderly conduct hinges upon whether they cause or unjustifiably risk a public disturbance. 'The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder.'"[24]

4

We cannot characterize the Defendant Officers' actions in arresting Wilson for disorderly conduct as "plainly incompetent" or a "knowin[g] violat[ion] the law." Wilson does not dispute his appearance on the news video which he admits "speaks for itself" and in which he is shown "gesturing toward the police" and "clear[ly] . . . not talking in a quiet, conversational tone or volume."[25] In the video, Wilson appears to be screaming in the face of police officers who are attempting to keep protesters back. Defendant Officers based their arrest on their eyewitness view of the chaos before them. While there are questions whether Wilson's individual conduct reaches the level of "disorderly conduct," those questions do not equal plain incompetence or knowing violations.

Wilson further argues qualified immunity does not apply here because "fabrication" or "falsification" of evidence negates probable cause, asserting the Defendant Officers fabricated and falsified evidence to "cover-up their misconduct" by "falsely claiming [Wilson's] behavior justified his arrest and the use of force."[26] There is no evidence in the record to support Wilson's bald assertion Defendant Officers fabricated or falsified evidence.

The Defendant Officers met their burden of persuasion in establishing qualified immunity at summary judgment.[27] Accordingly, we grant summary judgment in favor of Defendant Officers on the basis of qualified immunity.

### B.   State law claims of false arrest/false imprisonment are jury issues.

Defendants argue they are entitled to summary judgment on Wilson's false arrest and false imprisonment claims because they had probable cause to arrest him for disorderly conduct.[28] Under Pennsylvania law on false arrest and false imprisonment, Wilson must show (1) detention of another person, and (2) unlawfulness of such detention.[29] "An arrest based on probable cause cannot support a claim for false arrest or false imprisonment under Pennsylvania

5

law."[30] "Probable cause exists when the facts and circumstances which are within the knowledge of the police officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime."[31]  While the existence of probable cause is generally a question of fact for the jury, a "district court may conclude that probable cause exists as a matter of law if the evidence, viewed most favorably to [the] Plaintiff, reasonably would not support a contrary factual finding, and may enter summary judgment accordingly."[32]

Defendant Officers argue probable cause existed to arrest Wilson for disorderly conduct under the Pennsylvania criminal code because "...with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) engages in fighting or threatening, or in violent or tumultuous behavior; (2) makes unreasonable noise;(3) uses obscene language, or makes an obscene gesture; or (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor."[33]

Defendant Officers Smith and Jean described the chaotic scene upon arriving at the protest, including "belligerent" people shouting and gesturing obscenities to police.[34]  Defendant Officers Smith and Jean testified people in the crowd began throwing water bottles.[35]  Defendant Officer Smith testified protestors spat in the direction of police.[36]

Defendant Officer Fitzgerald testified to a crowd of protesters in front of the firehouse doors chanting anti-police and anti-fire department statements, including the fire department as "murderers."[37]  Defendant Officer Smith identified Wilson as one of the men standing in front of the firehouse.[38]  Around that time, the protestors blocked the firehouse and the fire department needed to leave to respond to an emergency call to stop a fire.[39]  Police began to push protestors off the street and on to the sidewalks to allow fire trucks to get out of the firehouse.[40]  Officer

6

Fitzgerald testified the crowed began to disperse and the fire trucks exited the firehouse, but persons, including Wilson, tried to incite the crowd to "continue the demonstration and to yell things."[41]   At this point, Lieutenant Galie from the 12th Police District, determined Wilson "had to leave" because he was causing the disturbance.[42]   Officer Fitzgerald also identified Wilson as the individual on news video footage yelling at police officers, pointing at police officers and waving his arms.[43]   Wilson admits his behavior approximately twenty minutes prior to his arrest.[44]   Lieutenant Galie testified he would have told officers to remove people from the protest for trying to incite a riot or "verbally inciting violence against the police."[45]   Defendant Officer Jean recalled Wilson shouting obscenities and being disorderly before his arrest.[46]

Citing disputed issues of fact, Wilson denied engaging in violent or criminal behavior or used foul gestures or language or threw objects at police; Lieutenant Galie's testimony "99.9 percent of the [protesters] were not obnoxious, they were not violent, not at all;" and testimony of Defendant Officers Jean and Smith who could not recall Wilson's conduct at the time of his arrest.[47]   Wilson cites Defendant Officer Fitzgerald testifying he could not recall the "exact words" Wilson used at the protest.[48]   Wilson argues this testimony is inconsistent with Officer Fitzgerald's affidavit swearing he observed Wilson "engaging in the acts depicted in the video."[49]   Wilson cites Defendants' argument Lieutenant Galie observed Wilson engaging in disorderly behavior prior to his arrest which he contends is contradicted by Lieutenant Galie's testimony he could not remember seeing Wilson at the protest or giving an order to the Defendant Officers to arrest him.[50]

Viewing the facts in the light most favorable to Wilson, we find there are several genuine issues of material fact concerning probable cause to arrest Wilson for disorderly conduct.  We cannot conclude these facts reasonably if proven at trial would not support a jury finding of false

arrest under Pennsylvania law.  As detailed in the foregoing analysis, we find questions of fact as

to probable cause at the time of Wilson's arrest.[51]

### III.   Conclusion

Wilson adduced genuine issues of material fact precluding summary judgment on its

Pennsylvania false arrest/false imprisonment claim. Defendant Officers met their burden of

persuasion for qualified immunity on federal false arrest claim. While these results could

possibly be interpreted as facially incongruous, we are mindful officers are entitled to qualified

immunity in situations where they are not plainly incompetent. We grant Defendant Officers'

motion for summary judgment dismissing the federal civil rights false arrest claim but deny their

motion on the Pennsylvania false arrest/false imprisonment claim.

---

[1]   As the Supreme Court recently held: "It is uncontested and uncontestable that government
officials may not exclude from public places persons engaged in peaceful expressive activity
solely because the government actor fears, dislikes, or disagrees with the views those persons
express. It is equally plain that the fundamental right to speak secured by the First Amendment
does not leave people at liberty to publicize their views whenever and however and wherever
they please." *Wood v. Moss*, __ U.S. __, 134 S.Ct. 2056, 2066, 188 L.Ed.2d 1039 (2014)
(internal citations omitted) (addressing qualified immunity in the context of protesters' First
Amendment claims alleging Secret Service agents engaged in viewpoint discrimination when
they moved protesters away from the location of the President while allowing supporters to
remain in their original location).

[2]   The Court's Policies require a Statement of Undisputed Material Facts ("SUMF") be filed in
support of a Fed.R.Civ.P. 56 motion as well as an appendix of exhibits or affidavits. Defendant
Officers filed their SUMF at ECF Doc. No. 28-1 ("Defendants SUMF").  Defendants filed an
appendix at ECF Doc. No. 28-2 and 28-3. Wilson responded to Defendants' SUMF at ECF Doc.
No. 31-1, referred to as "Wilson's RSUMF." Within his response to Defendants' SUMF, Wilson
included "Additional Facts the Preclude Summary Judgment" referred to here as "Wilson
ASUMF." *Id.* Wilson added documents to the appendix at ECF Doc. No. 31-1.  References to
exhibits in the appendices shall be referred to by Bates number, for example, "Appendix ("A.")
at 1."

[3]   Wilson ASUMF at ¶1.

[4]   *Id.*

[5]   Defendants SUMF at ¶1; Wilson ASUMF at ¶¶ 2-3.

[6] Wilson ASUMF at ¶ 4.

[7] Defendants SUMF at ¶¶1, 2, 4-5, 7 ; Wilson ASUMF at ¶ 4.

[8] A. at 4; *see also* Defendants SUMF at ¶ 12; Wilson ASUMF at ¶7.

[9] Wilson RSUMF at ¶ 3.

[10] Defendants' SUMF at ¶¶ 5-8; Wilson RSUMF at ¶¶ 6, 8; Wilson ASUMF at ¶ 8.

[11] Defendants SUMF at ¶ 11; Wilson RSUMF at ¶ 11.

[12] *Id.* at ¶ 9.

[13] Wilson does not intend to pursue his First Amendment retaliation claim.   Wilson Opposition at 1, n.2 (ECF Doc. No. 31).

[14] Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(a).   A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On a motion for summary judgment, the court must consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted). If the movant carries its initial burden of showing the basis of its motion, the burden shifts to the non-moving party to go beyond the pleadings and point to "specific facts showing that a genuine issue exists for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In other words, the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (citation and internal quotation marks omitted). Summary judgment must be granted against a non-moving party who fails to sufficiently "establish the existence of an essential element of its case on which it bears the burden of proof at trial." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

[15] Defendants' Brief at 4 (ECF Doc. No. 28).

[16] *Wood*, 134 S.Ct. at 2061(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[17] *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

[18] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (district courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.")

[19] *Rodriguez v. Panarello*, No. 13-7632, 2015 WL 4722613, *6 (E.D. Pa. Aug. 10, 2015) (citing *Pearson*, 555 U.S. at 236) (emphasis in original); *see also Fleck v. Trustees of Univ. of Pa.*, 995 F.Supp.2d 390, 405 (E.D. Pa. 2014) (a negative finding on either of the two prongs under *Saucier* entitles the official to qualified immunity).

[20] *Wood*, 134 S.Ct. at 2067 (quoting *Saucier*, 533 U.S. at 202).

[21] *Marcavage v. Nat'l Park Service*, 666 F.3d 856, 860 (3d Cir. 2012) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

[22] Wilson Opposition at 12 (ECF Doc. No. 31).

[23] *Gilles v. Davis*, 427 F.3d 197, 207 (citing *Hunger v. Bryant*, 502 U.S. at 229).

[24] *Hock*, 728 A.2d at 946 (citing *Commw. v. Greene*, 189 A.2d 141, 144 (Pa. 1963)).

[25] Wilson RSUMF at ¶ 6.

[26] Wilson Opposition at 12-13 (ECF Doc. No. 31).

[27] *Halsey v. Pfeiffer,* 750 F.3d 273, 288 (3d Cir. 2014).

[28] Defendants' Brief at 4-5 (ECF Doc. No. 28).

[29] *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994); *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. 2010).

[30] *DiStefano v. Macy's Retail Holdings, Inc.*, No. 14-2078, 2015 WL 5049825, at *2 (3d Cir. Aug. 27, 2015) (citing *Renk*, 641 A.2d at 293).

[31] *Renk*, 641 A.2d at 293 (internal quotation and citation omitted).

[32] *DiStefano*, 2015 WL 5049825 at *2 (citing *Merkel v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788-89 (3d Cir. 2000)).

[33] 18 Pa.C.S.A. §5503(a).

[34] A. at 49-50, 59.

[35] *Id.*

[36] A. at 50-51.

[37] A. at 30.

[38] A. at 52-54.

[39] A. at 30-31.

[40] *Id.*

[41] *Id.*

[42] A. at 31.

[43] A. at 26.

[44] A. at 12-13.

[45] A. at 39.

[46] A. at 60.

[47] Wilson Opposition at 4-5 (ECF Doc. No. 31).

[48] *Id.* at 5-6.

[49] *Id.*

[50] *Id.*

[51]  We express no opinion on the Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8541 *et seq.* as Defendants do not make this argument in support of their summary judgment motion.