IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NUMAH BARKUE WILSON** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 15-1793** |
| | : | |
| **OFFICER JOEL JEAN,** *et al.* | : | |

**KEARNEY, J.**                                                                                                    **February 1, 2016**

### MEMORANDUM

The persuasive power of video, so often properly used to challenge police officers, can also compellingly demonstrate officers' probable cause for a disorderly conduct arrest and lack of excessive force upon a citizen. Based on news footage and eyewitness testimony, the jury found police officers had probable cause to arrest a lead participant in an otherwise valid protest which turned on a warm summer evening into tumultuous disorderly conduct. Citizens engaging in disorderly conduct such as ignoring police orders abandon a First Amendment defense. Ignoring the video evidence and the testimony of the officers, the plaintiff seeking post-trial relief through a new trial or judgment as a matter of law must do more than challenge the jury's credibility findings or our denial of a jury instruction concerning a First Amendment right to engage in tumultuous conduct. The attentive jury relied upon several witnesses and the compelling video evidence in finding Defendant police officers did not engage in excessive force under federal law or falsely arrest or falsely imprison for disorderly conduct under Pennsylvania law. With appropriate deference to the attentive jury's factual findings, we deny the Plaintiff's Motion for Judgment as a matter of law under Fed.R.Civ.P. 50(b) and for new trial under Fed.R.Civ.P. 59(a) in the accompanying Order.

## I. Background

On July 7, 2014, Numah Barkue Wilson ("Wilson") joined a community protest challenging firefighters for not responding more quickly to a fire which killed four children, including two of Wilson's nieces, destroyed ten homes and displaced more than thirty (30) residents. Print and broadcast media captured the protest on video and in photographs. Police arrested Wilson at the protest for disorderly conduct and later released him from custody without charges.

Wilson sued Police Officers Joel Jean, Kyle Smith and William Fitzgerald (collectively "Defendant Officers") under 42 U.S.C. §1983 claiming they violated his First, Fourth and Fourteenth Amendment rights. Wilson alleged federal claims of false arrest, excessive force, and a First Amendment retaliation claim,[1] as well as supplemental state law claims of assault, battery, false arrest and false imprisonment.[2]

Defendant Officers moved for partial summary judgment on Wilson's federal false arrest and First Amendment retaliation claims and on his state law claims of false arrest and false imprisonment. Defendant Officers did not seek summary judgment on Wilson's §1983 excessive force claim or his state law assault and battery claims, conceding those claims would be resolved by the jury. Defendant Officers argued probable cause existed to arrest Wilson for disorderly conduct while participating in the protest, and qualified immunity shields them from liability. In response, Wilson agreed to proceed to trial only on his federal claims of false arrest and excessive force, and the supplemental state law claims, and abandoned his First Amendment retaliation claim.

On October 30, 2015, we granted in part, and denied in part, Defendant Officers' motion for partial summary judgment.[3] We found qualified immunity protects Defendant Officers from

civil rights liability, granted summary judgment in favor of Defendant Officers and dismissed Wilson's federal civil rights false arrest claim. Separately examining probable cause for disorderly conduct under Pennsylvania law, we found genuine issues of material fact precluded summary judgment and, accordingly, denied the motion as to the state false arrest and false imprisonment claim.

We presided over a two-day jury trial on November 13 and 16, 2015. Following the close of Defendants' case, Wilson moved under Rule 50 for judgment as a matter of law on his state law claim of false arrest/false imprisonment arguing no evidence to support probable cause for a disorderly conduct arrest because none of the Defendant Officers could specifically describe any words or conduct by Wilson falling within the Pennsylvania statute. After argument, we denied Wilson's Rule 50 motion without prejudice.

During our charging conference, Wilson objected to a proposed jury instruction regarding the probable cause element of his state law claim for false arrest, arguing the proposed instruction failed to instruct the jury an officer, when considering whether he has probable cause to arrest, must consider a plaintiff's First Amendment rights, and disorderly conduct cannot be used to punish those engaged in activity protected by the First Amendment. We denied the portion of Wilson's suggested charge regarding the First Amendment within the state law false arrest/false imprisonment charge.

On November 16, 2015, the jury returned a verdict in favor of each of the Defendant Officers on the federal excessive force claim and the state law false arrest/false imprisonment claim. We entered judgment on November 17, 2015.

## II. Analysis

Wilson moved under Rule 50(b) arguing our denial of his Rule 50 motion is erroneous and seeking judgment as a matter of law on the false arrest/false imprisonment claim. Wilson moved for a new trial under Rule 59(a), arguing we erred (1) by granting partial summary judgment and finding qualified immunity for the Defendant Officers on the federal false arrest claim; and (2) by failing to instruct the jury on First Amendment activity in determining probable cause to arrest for disorderly conduct. We disagree and deny his motion.

### A. Ample evidence exists for the jury to find probable cause for a disorderly conduct arrest.

Wilson claims we erred in denying his Rule 50(a) motion because video of news coverage does not show any criminal conduct by Wilson; Wilson's conduct by raising his voice while participating in the demonstration does not constitute "unreasonable noise" within the meaning of the disorderly conduct statute; and, in their trial testimony, Defendant Officers could not describe any specific conduct or words by Wilson constituting disorderly conduct. Wilson argues as, in his view of the trial, no witness recalled the particular words or conduct to establish probable cause, our denial of his Rule 50 motion is erroneous.

Judgment as a matter of law under Rule 50 may be granted post-trial if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."[4] A court may grant the motion only if, "after viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability."[5] Rule 50 motions "should be granted sparingly," and where "the record is critically deficient of the minimum quantum of evidence in support of the verdict."[6] "The question is not whether there is literally no evidence supporting the unsuccessful party, but whether there is evidence upon which

a reasonable jury could properly have found its verdict."[7] In making this narrow determination, "we must refrain from weighing the evidence, determining the credibility of witnesses, or substituting our own version of the facts for that of the jury."[8]

Defendant Officers arrested Wilson for disorderly conduct. Under Pennsylvania law, "a person is guilty of disorderly conduct if, with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) engages in fighting or threatening, or in violent or tumultuous behavior; (2) makes unreasonable noise; (3) uses obscene language, or makes an obscene gesture; or (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor."[9] Whether a person's words or acts rise to the level of disorderly conduct under the statute, "hinges on upon whether they cause or unjustifiably risk a public disturbance."[10] "The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder."[11]

Defendant Officers argue the jury could reasonably conclude Wilson engaged in "tumultuous conduct, made unreasonable noise, *and* created a hazardous condition when he yelled, acted unruly, and tried to incite the crowd"[12] as well as "scream[ed] obscenities intermingled with anti-police and anti-firefighter rhetoric in the middle of a crowd so angry that it had blocked a fire station."[13] Defendants respond the jury "had at least five evidentiary bases"[14] from which the jury could reasonably conclude probable cause to arrest Wilson for disorderly conduct: testimony from Officer Fitzgerald, including testimony Wilson blocked the fire station; testimony from all three Defendant Officers; testimony from witness Weahkannah Sirleaf; and, video evidence.

### *Trial testimony of Defendant Officer Fitzgerald*

Officer Fitzgerald testified Wilson "was in our close proximity being unruly, trying to further incite the crowd, and Lieutenant Galie indicated that he [Wilson] was one of the individuals need [sic] to be taken off the street to try to further calm things down."[15] Although Officer Fitzgerald could not remember words spoken by Wilson, he testified he observed "from [Wilson's] actions" conduct inciting a crowd.[16] Officer Fitzgerald further testified: "We were trying to get the crowd out of the street to further dissipate them, to get the flow of traffic back moving, and Lieutenant Galie indicated that Numah Wilson, based on his actions, should be some person to be taken off the street so we can further try to calm things down."[17]

When shown a clip of the news footage, Officer Fitzgerald identified Wilson and testified he observed Wilson acting in the way shown in the video.[18] Officer Fitzgerald testified: "As you can see in the video, he looks like he is yelling towards the police, being unruly, causing that disturbance, trying to further get the crown in the protesting. Like I indicated, Lieutenant Galie identified him as one of the individuals that should be taken off the street, arrested, to try to further calm things down. So at that point, myself and other officers converged on him, placed him into custody and they escorted him to the district and I covered their flank."[19] Officer Fitzgerald testified to his understanding of behavior constituting disorderly conduct under Pennsylvania statute as "tumultuous behavior, being unruly, loud offensive language, you know, acts of violence, that type of thing," and from his observation, Officer Fitzgerald "would have thought [Wilson] was acting in that type of manner" before Lieutenant Galie directed removal of Wilson from the street.[20] Officer Fitzgerald testified Wilson was yelling and believed Wilson "was . . . trying to incite the protesters."[21]

Defendant Officers argue the jury had an evidentiary basis to find probable cause to arrest Wilson for disorderly conduct based on Officer Fitzgerald's testimony Wilson was part of the crowd of protestors blocking the fire station.[22] When shown the video, Officer Fitzgerald testified people "were not up to the door. They were in the street trying to prevent – yeah, cause whatever trouble they could to the truck not be able to get out."[23] We find this testimony is sufficient evidentiary basis for the jury to find probable cause for a disorderly conduct arrest.

### *Trial testimony of Defendant Officers Jean and Smith*

Defendant Officer Jean testified he recalled Wilson shouting obscenities, but could not recall a specific word used by Wilson.[24] Defendant Officer Smith testified he heard Wilson shouting obscenities, but testified he did not know "specifically . . . what [Wilson] was saying" before the arrest, and does not remember any particular word spoken by Wilson.[25] While Wilson makes much of the Defendant Officers' inability to recall a specific word used by him, the record reflects both Defendant Officers Jean and Smith testified they heard Wilson shouting obscenities. We may only grant a Rule 50(b) motion for judgment as a matter of law "where the record is critically deficient of the minimum quantum of evidence in support of the verdict."[26] We do not weigh evidence, determine credibility of witnesses, or substitute our version of the facts for the jury's version.

Wilson argues even assuming he directed epithets at Defendant Officers, only epithets constituting "fighting words" are sufficient to establish probable cause, citing *Commonwealth v. Hock*.[27] Wilson claims the Defendants' legal authority "do[es] not support the proposition that the use of profanity is unlawful under such circumstances as presented by this case."[28]

In *Hock*, the Pennsylvania Supreme Court held a defendant's single profane remark to a police officer insufficient to arrest for the offense of disorderly conduct.[29] The court in *Hock*

found the defendant's single epithet directed at a police officer did not constitute fighting words[30] because, under the circumstances, "a single epithet, uttered in a normal tone of voice while walking away from the officer, did not alarm or frighten him, and there were no bystanders."[31] We find *Hock* distinguishable. Under Pennsylvania law "one may be convicted of disorderly conduct for engaging in the activity of shouting profane names and insults at police officers on a public street while the officers attempt to carry out their lawful duties."[32] Applying the Rule 50 standard, we find sufficient evidence in the surrounding circumstances of the protest, including testimony and the video evidence, to support probable cause on the disorderly conduct arrest.

### *Testimony of Weahkannah Sirleaf*

Weahkannah Sirleaf attended the protest and stood near Wilson before the arrest.[33] Mr. Sirleaf testified police officers tried to push the crowd back, including Wilson.[34] Mr. Sirleaf testified Wilson "was not in their face, cussing them out or saying anything negative."[35] Mr. Sirleaf conceded the police wanted Mr. Wilson and the crowd to move back, and testified while Wilson moved back, "he got tackled."[36] Defendants' counsel questioned Mr. Sirleaf on his earlier deposition testimony:

> Q. [Y]ou were asked: "Did you see how he [Wilson] was acting immediately before he was taken down to the ground? And I'm going to read your answer, and I'm going to ask you if I read it correctly. Okay?
> A. Okay.
> Q. He was not acting like goofy. He was just going in front of the cops. He was not in their face or saying anything negative to the cops. They just got angry because they don't want anyone closer and they wanted everyone to move and we were just moving back and forth. Did I read that correctly?
> A. Yes.
> Q. So, you disobeyed the request of the officers to move back, and you continued to move back and forth. Correct?
> A. Correct.[37]

From this testimony, Defendants assert Mr. Sirleaf testified he and Wilson disobeyed police orders to move before Wilson's arrest. Wilson argues Mr. Sirleaf's testimony shows only Sirleaf disobeyed the police order to move, and is not evidence Wilson disobeyed police. We find this distinction lacks merit as the jury heard, a minute earlier, the police wanted everyone to move and Wilson elected not to move. While this basis is weaker than others, combined with other testimony and the videotape, the Defendant Officers adduced several grounds supporting the jury's finding of probable cause to arrest for disorderly conduct.

### *Video*

Throughout trial, counsel showed a video of news footage from the protest. Wilson conceded he appears on the video and in one clip he is seen yelling and waving his arms while standing before police officers, although he curiously denied doing so at trial.[38] Wilson admitted the clip of video is taken approximately twenty (20) minutes before his arrest.[39] He denied yelling at an officer; rather, he testified while standing close enough to a police officer, he objected to the officer "poking me."[40] He denied waving his arms.[41] In his motion, Wilson distills his appearance in the video into three parts: (1) an interchange with police where Wilson is standing several feet from a police officer "who then jabs [him] in the chest with a metal asp," to which he "responds in an animated manner, though there is no evidence he is making 'unreasonable noise' within the meaning the disorderly conduct statute," and to which he "react[s] angrily, but is not seen or heard posing a danger" to officers or others on the scene; (2) moving quickly with the crowd up 65th Street; and (3) handcuff scene after his arrest where he is shouting "murderers" while being escorted from the scene by police.[42]

The Defendant Officers characterize the video showing Wilson "screaming and waving his arms at police officer, behavior that Officer Fitzgerald witnessed."[43] Defendants argue

9

Wilson's conduct constitutes "tumultuous behavior" and "unreasonable noise" and is evidence on which the jury could base its verdict.

Although Wilson couches his actions captured on video as "animated" and "reacting angrily," there is no dispute Wilson appears in the video. Wilson, Lieutenant Galie, Officer Fitzgerald, and Gbalia Taweh, all testified to the scenes shown in the video. It is the jury's role to consider the video and testimony and make credibility determinations, including Wilson's characterization of his conduct on video. Considering the totality of the evidence, including the video, we cannot say "the record is critically deficient of the minimum quantum of evidence in support of the verdict." Accordingly, we deny Wilson's Rule 50(b) motion.

**B. Wilson has not demonstrated a basis for a new trial.**

Federal Rule of Civil Procedure 59(a)(1)(A) permits a court to grant a new trial "on all or some of the issues – and to any party . . . after a jury trial for any reason for which a new trial has heretofore been granted in an action at law in federal court."[44] Our decision to grant a new trial after a jury verdict is within our discretion, and "such requests are disfavored."[45] In evaluating a motion for a new trial on the basis of trial error, we ask the questions: "whether an error was made in the course of trial"; and, "whether that error was so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice."[46]

      **1. First Amendment jury instruction as defense to probable cause for disorderly conduct.**

Wilson argues a new trial is warranted because we sustained the Defendant Officers' objection to his proposed instruction regarding the import of the First Amendment to the state law false arrest for disorderly conduct. We must consider "whether, taken as a whole, the instruction properly apprised the jury of the issues and the applicable law."[47] "[A] mistake in a

jury instruction constitutes reversible error only if it fails to 'fairly and adequately' present the issues in the case without confusing or misleading the jury."[48]

Wilson asked we instruct the jury:

> In considering whether there is probable cause to arrest, an officer must also consider the rights of the plaintiff under the First Amendment to the United States Constitution. It has long been established that criminal statutes such as disorderly conduct may not be used to punish those who challenge police authority or otherwise engage in protected First Amendment activity. Mr. Wilson's right in a democracy to disagree with a police officer is fully protected. The right to challenge official authority is among the fundamental principles that distinguishes this nation from much of the world. The crime of disorderly conduct may not be used to punish anyone exercising a protected First Amendment right. While not all speech is protected by the First Amendment, the right as a citizen in a democracy to disagree with a police officer is not unprotected. The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation front a police state.[49]

Defendant Officers objected to the inclusion of the First Amendment into the disorderly conduct instruction.[50] At our charging conference, Defendant Officers argued the First Amendment instruction should not be given because Wilson withdrew his First Amendment retaliation claim.[51] Wilson argued whether he maintained a First Amendment retaliation claim is immaterial; the issue is whether the jury should be instructed to establish probable cause for a disorderly conduct arrest, a police officer cannot use the offense to punish persons engaged in protected speech.[52] More specifically, counsel argued: "I think it is related to the probable cause issue in the sense that if the jury should find that the activities that the plaintiff was engaged in are in fact protected First Amendment activities and he was nonetheless charged with disorderly conduct, then there would be no probable cause."[53]

Wilson's proposed charge suggests if the jury finds his activities are protected by the First Amendment, there is no probable cause to arrest for disorderly conduct. According to

Wilson, *if* a jury found him engaging in First Amendment activity, **then** there could never be probable cause to arrest him for disorderly conduct.

We, following the Pennsylvania Supreme Court's finding as to constitutionality of its disorderly conduct statute, do not find an immunity or broad First Amendment protection when the police determine a citizen has violated the Commonwealth's disorderly conduct statute. The legal authority cited by Wilson does not support his proposed charge.[54] In *City of Houston*, the Supreme Court held a municipal ordinance making it unlawful to interrupt a police officer performing his duties unconstitutionally overbroad.[55] Wilson quotes a sentence from the *City of Houston* opinion in his proposed jury instruction: "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."[56] The context of this excised sentence is taken from the Court's analysis finding the challenged municipal ordinance so unconstitutionally overbroad because "it is not limited to fighting words nor even to obscene or opprobrious language, but prohibits speech that 'in any manner . . . interrupt[s]' an officer."[57] The constitutionality of the Pennsylvania disorderly statute is not at issue here. Pennsylvania's disorderly conduct statute passed constitutional muster in *Commonwealth v. Mastrangelo*.[58]

The First Amendment does not permit Wilson "unfettered speech"[59] nor is it "an absolute shield against a disorderly conduct charge."[60] We instructed the jury on the precise elements of the Pennsylvania statute. Wilson did not show us, and we could not find, another court instructing the jury on the First Amendment to show lack of probable cause for a disorderly conduct charge, especially after the plaintiff withdraws his First Amendment retaliation claim. "[T]he First Amendment is not an absolute shield against a disorderly conduct charge…although speech may be protected, [protesters'] choice to disobey police officers is not."[61] We instructed

the jury on the elements of disorderly conduct under Pennsylvania law, defined false arrest and false imprisonment, and defined probable cause, an element of false arrest.[62] There is ample evidence the Defendant Officers arrested Wilson for conduct far beyond any protected speech or charged him in a manner to directly target his speech.[63] To the contrary, as he argues, his offensive speech characterizing the officers as "murderers" occurs after the officers arrest him for disorderly conduct. We cannot imagine, and no evidence supports, a finding the Defendant Officers know of his future speech when they arrested him for disorderly conduct.

Our instructions taken as a whole "properly apprised the jury of the issues and the applicable law" and did not fail to "fairly and adequately present the issues in the case without confusing or misleading the jury," the applicable standard for reversible error. Accordingly, Wilson's motion for a new trial on this issue is denied.

### 2. We properly applied qualified immunity in granting partial summary judgment weeks before trial.

Wilson moves for a new trial under Rule 59(a) arguing we erred in our October 30, 2015 partial summary judgment order granting qualified immunity. We are not convinced Wilson's motion under Rule 59(a) based on a pre-trial ruling is grounds for a new trial. Even if we granted Wilson's motion for a new trial, the complained-of summary judgment ruling would remain, and Wilson provides no authority granting a new trial under Rule 59(a) would reverse our earlier summary judgment ruling.[64]

Even if we consider whether our pre-trial summary judgment ruling constitutes an error made in the course of trial, we do not find the error "so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice."[65] The thrust of Wilson's argument is summary judgment in favor of Defendant Officers on the federal false arrest claim based on qualified immunity "compelled [him] to proceed to trial on the state false arrest claim which

13

carries the 'willful misconduct' standard."[66] Wilson argues "willful misconduct" for the state law false arrest/false imprisonment claim is more onerous than a Fourth Amendment unlawful arrest claim does not carry such a requirement. Wilson argues this constitutes prejudice. We disagree.

After instructing the jury on the state law false arrest/false imprisonment claim and probable cause, we instructed the jury on willful misconduct:

> "If you find the Officers did not have probable cause to arrest or detain Mr. Wilson, you must then consider whether the Officers' conduct constituted willful misconduct. Willful misconduct means the Officers actually understood that what he was doing was illegal but chose to do it anyway." [67]

The jury's consideration of willful misconduct would only have been reached if it found the Defendant Officers *did not have* probable cause to arrest or detain Wilson. The jury did not reach the question of willful misconduct because it determined the Defendant Officers had probable cause to arrest or detain Wilson.[68]

Defendants argue our summary judgment ruling did not prejudice Wilson because even if the federal false arrest claim went to the jury, it would have considered the same probable cause element as under the state law false arrest claim. Defendants cite the Third Circuit Model Jury Instruction §4.12.2 providing: "An arrest is a 'seizure,' and the Fourth Amendment prohibits police officers from arresting a person unless there is probable cause." According to Defendant Officers, the jury would have rejected the federal false arrest claim even if it had survived summary judgment. Wilson provides no argument in reply, instead concluding, without authority, prejudice to him "is therefore manifest."[69] Even if our summary judgment ruling is in error and reviewable under Rule 59 (a), we do not find it "so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice." Accordingly, we deny Wilson's motion for a new trial under Rule 59(a).

### III. Conclusion

Wilson's attempts to challenge the jury's verdict are unavailing. His motion for judgment as a matter of law is contrary to the trial testimony and video evidence which shows, in several instances, a concern of the police to justify a jury's finding of probable cause and no evidence of excessive force.[70] His Rule 59(a)(1)(A) motion for new trial also fails because it creates an absolute First Amendment defense to disorderly conduct as part of the jury charge. As we found at the charging conference, the First Amendment is not an absolute shield against a disorderly conduct charge. While we also question whether Wilson may challenge our October 30, 2015 ruling granting qualified immunity on summary judgment at this stage, we substantively find Wilson is not prejudiced and the jury fairly considered evidence regarding prejudice. We deny Wilson's motion in the accompanying order.

---

[1] *See* Amended Complaint at ¶¶ 18, 20 (ECF Doc. No. 23).

[2] *Id.* at ¶ 22.

[3] *See* Memorandum and Order (ECF Doc. Nos. 45 and 46).

[4] Fed.R.Civ.P. 50(a)(1).

[5] *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir.1993).

[6] *Eshelman v. Agere Systems, Inc.*, 554 F.3d 426, 433 (3d Cir. 2009) (quoting *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995)); *see also Price v. Trans Union, LLC*, 839 F.Supp. 2d 785, 792 (E.D. Pa. 2012).

[7] *Eshelman*, 554 F.3d at 433.

[8] *Id.* (quoting *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)).

[9] 18 Pa. C.S. § 5503(a).

[10] *Commw. v. Hock*, 728 A.2d 943, 946 (Pa. 1999).

[11] *Id.* (quoting *Commw. v. Greene*, 189 A.2d 141, 144 (Pa. 1963)).

[12] Defendants' response at 6 (emphasis in original) (ECF Doc. No. 62).

[13] *Id.*

[14] *Id.* at 4-5.

[15] Day 1 Trial Transcript at 143-44 (ECF Doc. No. 62-1).

[16] *Id.* at 144.

[17] *Id.* at 145.

[18] *Id.* at 156.

[19] *Id.* at 156-57.

[20] *Id.* at 158.

[21] *Id.* at 159.

[22] *Id.* at 142.

[23] *Id.*

[24] *Id.* at 120.

[25] *Id.* at 131, 133.

[26] *CBG Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 357 F.3d 375, 383 (3d Cir. 2004) (quoting *Johnson v. Campbell*, 332 F.3d 199, 204 (3d Cir. 2003)).

[27] 728 A.2d 943 (Pa. 1999). Wilson additionally cites *Commw. v. Gilbert*, 674 A.2d 284 (Pa. Super. 1996). In *Gilbert*, the Commonwealth charged defendant with disorderly conduct under the "unreasonable noise" section of the statute, 18 Pa.C.S. § 5503(a)(2). The Pennsylvania Superior Court reversed defendant's conviction, finding the record did not support an inference the noise made by defendant – shouting his disagreement with a police officer's intent to tow his neighbor's car – was unreasonable under §5503(a)(2). *Id.* at 287.

[28] Wilson's reply at 4 (ECF Doc. No. 63).

[29] *Hock*, 728 A.2d at 944.

[30] "Fighting words" are words that "'by their very utterance inflict injury or tend to incite an immediate breach of the peace.'" *Hock*, 728 A.2d at 946, n.3 (quoting *Commw. v. Mastrangelo*,

414 A.2d 54, 58 (1980)). The use of fighting words "is not a constitutionally protected right." *Id.* To determine whether words constitute fighting words, "[t]he circumstances surrounding the words can be crucial, for only against the background of surrounding events can a judgment be made whether [the] words had a direct tendency to cause acts of violence by [others]." *Id.* at 946 (quotation omitted).

[31] *Hock*, 728 A.2d at 946.

[32] *Commw. v. Pringle*, 450 A.2d 103, 106 (Pa. Super. Ct. 1982).

[33] Day 2 Trial Transcript at 15 (ECF Doc. No. 62-2).

[34] *Id.* at 15-16.

[35] *Id.* at 15, 18.

[36] *Id.* at 16.

[37] *Id.* at 18.

[38] Day 1 Trial Transcript at 97-98.

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] Wilson's brief at 3-4 (ECF Doc. No. 59).

[43] Defendants' response at 7.

[44] Fed.R.Civ.P. 59(a)(1)(A).

[45] *Price*, 839 F.Supp. 2d at 792.

[46] *Id.* (citation omitted). *See also Solomon v. Sch. Dist. of Phila.*, 532 F. App'x 154, 157 (3d Cir. 2013) ("A Rule 59(a)(1)(A) motion should be granted only when 'the great weight of the evidence cuts against the verdict and ... a miscarriage of justice would result if the verdict were to stand.'") (citing *Springer v. Henry*, 435 F.3d 268, 274 (3d Cir. 2006)).

[47] *Donlin v. Philips Lighting N.Am. Corp.*, 581 F.3d 73, 78 (3d Cir. 2009) (citing *Dressler v. Busch Entm't Corp.*, 143 F.3d 778, 780 (3d Cir. 1998)).

[48] *Donlin*, 581 F.3d at 79 (quoting *U.S. v. Ellis*, 156 F.3d 493, 498 n.7 (3d Cir. 1998)).

[49] Plaintiff's Amended Proposed Jury Instructions at 7 (ECF Doc. No. 48).

[50] Defendants' Objections to Proposed Jury Instructions (ECF Doc. No. 42).

[51] Day 2 Trial Transcript at 36-38; Wilson raises, for the first time in his reply brief (ECF Doc. No. 63), concerns regarding our sustaining the Defendant Officers' objection during opening statements requiring Wilson's counsel to "move on" from the First Amendment defense. Even assuming his new challenge is proper, our sustaining the Defendants' objection during openings is consistent with Wilson withdrawing his First Amendment retaliation claim before trial and our finding the First Amendment is not a bar to a finding of probable cause for disorderly conduct, as detailed again today.

[52] *Id.* at 37-38.

[53] *Id.* at 38.

[54] *City of Houston v. Hill*, 482 U.S. 451 (1987); *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942); *Commw. v. Mastrangelo*, 414 A.2d 54 (Pa. 1980).

[55] *City of Houston*, 482 U.S. at 467.

[56] *Id.* at 462-63.

[57] *Id.* at 462 (footnote omitted).

[58] *Mastrangelo*, 414 A.2d at 57-58.

[59] *Fleck v. Trustees of Univ. of Penn.*, 995 F.Supp. 2d 390, 403 (E.D. Pa. 2014).

[60] *Startzell v. City of Phila.*, 533 F.3d 183, 204 (3d Cir. 2008). In *Startzell*, Appellants asserted claims against the city for false arrest arising from protesting at a festival organized by Philly Pride. The district court granted summary judgment, finding police had probable cause to arrest for disorderly conduct after Appellants refused to comply with police directive to move down the street. In affirming the district court, our Court of Appeals rejected Appellants' argument Pennsylvania's disorderly conduct statute may not be used against persons engaging in free speech, similar to the argument made by Wilson here, finding:

> Appellants argue that the Pennsylvania disorderly conduct statute may not be used against persons engaging in free speech. However, the First Amendment is not an absolute shield against a disorderly conduct charge. See *Commonwealth v. Gowan*, 399 Pa.Super. 477, 582 A.2d 879, 881 (1990) ("It is uncontrovertible that the exercise of free speech can go beyond constitutionally protected boundaries to the realm of prohibited and criminal behavior."). Moreover, although speech may be protected, Appellants' choice to disobey police orders is not.

*Startzell*, at 204.

[61] *Id.*

[62] Day 2 Trial Transcript at 121-24.

[63] *See Commw. v. Kozero,* No. 3592 EDA 2014, 2015 WL 6950455, *5-6 (Pa.Super.Ct., July 8, 2015).

[64] *See Dean v. Specialized Sec. Response*, 876 F.Supp.2d 549, 559 (W.D. Pa. 2012). In *Dean*, the court rejected the plaintiff's motion for a new trial based on the grounds of an erroneous summary judgment decision, and noted plaintiff failed to file a motion for reconsideration or to alter or amend the summary judgment. *Id.* The court further found even if plaintiff properly and timely filed a motion for reconsideration of summary judgment, any such motion would be denied because it did not fall within the three grounds for reconsideration: (1) an intervening change in the law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice. *Id.* at n. 8.

[65] *Price*, 839 F.Supp. 2d at 792.

[66] Wilson brief at 3. Wilson additionally argues he is entitled to a new trial on the excessive force claim because the jury's verdict "may have been influenced by the failure to consider the legality of the arrest under federal law." *Id.* He does not draw a nexus between the excessive force and probable cause arguments. Further, his speculation ignores ample evidence for probable cause and lack of any evidence, other than Wilson's testimony, of any injury. He offered no medical records. The video and photos taken after the alleged excessive force show no injury and Wilson met with city officials the day after the arrest.

[67] Day 2 Trial Transcript at 123-24. Wilson did not object to the willful misconduct instruction itself, telling the Court: "I thought your willful misconduct charge actually was succinct and to the point." *Id.* at 53-54.

[68] *See* Verdict Slip (ECF Doc. No. 58).

[69] Wilson reply at 7.

[70] We share our learned colleague Judge Surrick's view on the impact of video evidence in excessive force cases particularly when supported by the police officers' testimony. *See Kinsler v. City of Phila.,* No. 13-6412, 2015 WL 3870899 at *8 (E.D.Pa. June 29, 2015).